UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AURELIA RANDOLPH HAMILTON,

    Plaintiff,

v.                                         Case No: 2:17-cv-116-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Aurelia Randolph Hamilton's Complaint (Doc. 1) filed on February 23, 2017. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On January 3, 2013, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, asserting an onset date of October 29, 2010. (Tr. at 93, 201-213). Plaintiff's applications were denied initially on February 25, 2013 and upon reconsideration on June 10, 2013. (*Id.* at 93, 94, 117, 118). A hearing was held before Administrative Law Judge ("ALJ") Roxanne Fuller on August 4, 2015. (*Id.* at 38-72). The ALJ issued an initial unfavorable decision on September 25, 2015. (*Id.* at 20-33). The ALJ found Plaintiff not to be under a disability from October 29, 2010, through the date of the decision. (*Id.* at 33). The Appeals Council considered additional evidence submitted to it and denied Plaintiff's request for review. (*Id.* at 1-5).

Plaintiff filed a Complaint (Doc. 1) in this Court on February 23, 2017. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 20). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functioning capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (Tr. at 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 29, 2010, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease and depression. (*Id.* at 23). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*).

At step four, the ALJ found the following:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except occasional climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasional balance, stoop, balance, crouch, kneel, crawl; frequent handling objects, that is gross manipulation, with the left non-dominant hand; frequent fingering, that is fine manipulation, with the left non-dominant hand; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; able to perform simple, routine, repetitive tasks; occasional, superficial interaction with the public.

(*Id.* at 25).

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

The ALJ determined that Plaintiff was unable to perform her past relevant work as a case manager. (*Id.* at 31). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 32). The ALJ noted that the vocational expert identified the following representative occupation that Plaintiff was able to perform: marking clerk, DOT # 209.687-026, unskilled, light work with a SVP of 2; welding machine feeder, DOT # 819.687-010, unskilled, light work with a SVP of 2; and motel maid, DOT # 323.687-014, SVP 2, unskilled, light work with a SVP of 2. (*Id.* at 32). In addition, the vocational expert testified that Plaintiff could perform several sedentary jobs such as: shank taper, DOT # 788.687-114, unskilled, sedentary work with a SVP of 2; final assembler optical, DOT # 713.687-018, unskilled, sedentary work with a SVP of 2; and clip loading feeder, DOT # 694.686-010, unskilled, sedentary work with a SVP of 2. (*Id.* at 33). The ALJ concluded that Plaintiff was not under a disability from October 29, 2010, through the date of the decision. (*Id.*).

## II.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## III. Analysis

On appeal, Plaintiff raises two (2) issues. As stated by Plaintiff, they are:

1) The Commissioner failed to articulate good cause for rejecting the treating psychiatrist's opinion, Dr. Gallego, and failed to reconcile her decision to assign great weight to Dr. Nathan's treating opinion but still finding that Ms. Hamilton had only moderate limitations in concentration, persistence, and pace.

2) The Appeals Council failed to remand the case for proper review of new and material evidence including Dr. Hershkowitz's and Dr. Madden's progress notes. The record as a whole does not support the Commissioner's rejection of Dr. Hershkowitz's opinion given Dr. Hershkowitz's and Dr. Madden's progress notes.

(Doc. 25 at 1). The Court addresses each issue in turn.

### A. Weight of Physicians' Opinions

Plaintiff argues that the ALJ failed to articulate good cause in affording treating psychiatrist, Manuel F. Gallego, M.D.'s opinion little weight. (Doc. 25 at 12-18). In addition, Plaintiff argues that the ALJ erred in affording great weight to the opinion of Vaidy V. Nathan,

M.D., but not accepting Dr. Nathan's opinion that Plaintiff had poor concentration, not just moderate limitations in concentration, persistence, and pace. (*Id.* at 12, 18-19). The Commissioner argues that the ALJ properly evaluated the medical opinions of record and Plaintiff's RFC is supported by substantial evidence. (Doc. 26 at 5-12).

### 1. Legal Standard for Weight of Physician's Opinion

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citations omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

6

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*[2]

To begin, the Court addresses the issues surrounding Dr. Gallego's opinion.

### 2. Dr. Gallego's Opinion

Plaintiff asserts that Dr. Gallego treated Plaintiff from May 2013 through the date of the hearing decision. (Doc. 25 at 13). Plaintiff states that on July 21, 2015, Dr. Gallego completed a form, indicating that Plaintiff's condition met or medically equaled Listings 12.04 and 12.06. (*Id.* at 13-14 (citing Tr. at 308-12)). Plaintiff asserts that Dr. Gallego concluded that Plaintiff had marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and had repeated episodes of decompensation, each of extended duration. (Doc. 25 at 14 (citing Tr. at 308-12)). In addition, Plaintiff states that Dr. Gallegos completed a medical statement finding the following:

> [Plaintiff] would have extreme limitation in restriction of activities of daily living, and maintaining social functioning. She has deficiencies of concentration, persistence[,] and pace resulting in a frequent failure to complete tasks in a timely manner and repeated episodes of deterioration or decompensation in work or work[-]like setting[,] which caused her to withdraw from the situation or experience exacerbation of signs and symptoms. She was unable to function independently outside of her home due to panic attacks and depression. She would have extreme limitations in her ability to remember locations and work[-]like procedures; understand, carry-out, and remember short, simple, or detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule and maintain regular attendance and be punctual; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with others without being distracted; the ability to make simple work related decisions; the ability to complete a normal workday or

---

[2] After Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. See e.g., 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court applies the rules and regulations in effect at the time of the ALJ's decision because the regulations do not specify otherwise. *See Green v. Soc. Sec. Admin., Comm'r*, __ F. App'x __, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017)

> workweek without interruptions from psychologically based symptoms and to perform at a persistent pace without rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in a work setting, and the ability to set realistic goals or make plans independently of others.

(Doc. 25 at 14 (citing Tr. at 313-15)).

Plaintiff argues that that only reasons the ALJ gave to afford little weight to Dr. Gallego's opinion was that Dr. Gallego's opinion was inconsistent with his treatment records and with the medical evidence as a whole. (Doc. 25 at 15). Specifically, Plaintiff claims that the ALJ supported this finding by citing to: (1) Plaintiff having good energy levels and (2) Plaintiff denying hallucinations while on medication. (*Id.*). Plaintiff also claims that the ALJ improperly considered Plaintiff's Global Assessment Functioning "GAF" score. (*Id.* at 16). The Court addresses the issue concerning hallucinations first.

### a. Hallucinations

Plaintiff asserts that the ALJ erroneously determined that Plaintiff's hallucinations were under control and that Plaintiff denied hallucinations when she was taking her medication. (Doc. 25 at 15). Plaintiff argues that this is factually incorrect. (*Id.*). Plaintiff claims that throughout Dr. Gallego's records, he wrote that Plaintiff was having paranoia, delusions, and/or hallucinations. (*Id.* at 16). Plaintiff contends that the majority of the medical records "specifically indicated *positive auditory hallucinations* but even when the records did not so indicate, they indicated *delusions and sometimes paranoid delusions*. (*Id.* (emphasis in original)). In further support of her argument, Plaintiff contends that her medication was adjusted due to her continued symptoms and the progress notes do not reflect stability. (*Id.*).

Finally, Plaintiff asserts that she testified at the hearing that she was still hearing voices, although not as "bad" with medications. (*Id.*).

The Commissioner responds that Plaintiff points to some records that reflect delusions or paranoia, but "this is only an attempt to shift the issue." (Doc. 26 at 9). The Commissioner contends that those findings are not relevant to whether the ALJ's statement about hallucinations is supported by substantial evidence. (*Id.*). The Commissioner then claims that while records reflect hallucinations at time, this does not "show that the ALJ's statement is unsupported by substantial evidence." (*Id.*).

Dr. Gallego's Medical Statement included that Plaintiff had signs and symptoms of hallucinations, delusions, and/or paranoid thinking. (Tr. at 313). Although extremely difficult to decipher, Dr. Gallego's progress notes appear to indicate that from May 14, 2013 to June 9, 2015, at various times, Plaintiff suffered from paranoia, delusions, and/or hallucinations. (*See* Tr. at 413, 414, 416, 418, 419, 422, 424, 428, 429, 430-35, 439, 441-45). The ALJ found that Plaintiff's hallucinations were under control with medication, citing to Dr. Gallego's Progress Notes from September 23, 2014 through June 9, 2015. (*Id.* at 30). Upon review of these Progress Note, however, it is unclear that Dr. Gallego found Plaintiff's hallucinations and paranoia under control with medication. (*Id.* at 413-418). Dr. Gallego noted no delusions on January 16, 2015 and March 31, 2015, but the other Progress Notes arguably indicate paranoia. (Tr. at 413-18). Further, even if some Progress Notes indicate no hallucinations and/or paranoia, the other Progress Notes demonstrate that Plaintiff's delusions, paranoia, and hallucinations were not under control. (*See id.* at 413, 414, 416, 418, 419, 422, 424, 428, 429, 430-35, 439, 441-45). Although Plaintiff testified that her medications help with the hallucinations, the voices she

hears, and depression, Plaintiff also testified that she still hears voices even while she is on medication, just that the voices are not as bad. (*Id.* at 64).

In addition, the ALJ afforded Karen Collins, MSN, LCSW's opinion great weight, claiming that Ms. Collins' medical records "show[] that [Plaintiff's] symptoms are generally under control when she takes her medication. The opinion is also consistent with the claimant's testimony that her hallucinations and depression improve when she is on her medication." (*Id.* at 30). Ms. Collins' Progress Notes do not entirely support the ALJ's statement. In February 2013, Ms. Collins found Plaintiff generally appropriate, but in August 2013 Ms. Collins found Plaintiff unkempt with scattered cognition and having hallucinations as well as being delusional. (*Id.* at 437, 438, 451). Ms. Collins commented that she had a "very strange interaction!" with Plaintiff. (*Id.* at 437). In June 2014, Ms. Collins noted Plaintiff was unkempt and suffered from scattered and blocked cognition and was paranoid. (*Id.* at 420).

An ALJ cannot pick and choose which evidence supports her decision while disregarding evidence to the contrary. *Oliver v. Colvin*, No. 8:13-CV-2614-TBM, 2015 WL 10791904, at *6 (M.D. Fla. Mar. 23, 2015) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)). If an ALJ fails to articulate reasons to disregard contrary medical evidence, then then this is reversible error. *Id.* (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). Here the ALJ mentioned Plaintiff's history of hallucinations, paranoia and delusions, but disregarded the myriad of Progress Notes from Dr. Gallego and Ms. Collins that show that Plaintiff continues to suffer from these signs and symptoms and that although medications help, there is no indication that these signs and symptoms are under control. The ALJ based her decision to afford little weight to Dr. Gallego's opinion partially on the fact that Plaintiff denied hallucinations when she takes her medication. (*Id.* at 30). The Court finds that this statement is not supported by

substantial evidence. Thus, the Court finds that the ALJ erred in affording little weight to Dr. Gallego's opinion that Plaintiff has marked and extreme limitations for the reason that Plaintiff's hallucinations are generally controlled with medications. Accordingly, the Court reverses and remands this action to the Commissioner to reconsider the weight afforded Dr. Gallego's medical records and opinion.

### B. Remaining Issues

Plaintiff's remaining issues focus on the weight the ALJ afforded Dr. Nathan's opinion and evidence submitted to the Appeals Council. Because the Court finds that on remand, the Commissioner must reevaluate the medical evidence of Dr. Gallego in light of all of the evidence of record, the disposition of these remaining issues would, at this time, be premature.

## IV. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to: (1) reconsider the medical records and opinions of Dr. Gallego and Dr. Nathan in light of all of the medical evidence of record; and (2) reconsider the medical evidence submitted to the Appeals Council.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on February 20, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties